UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERI COLEMAN et al.,

    Plaintiffs,

v.

DMI GC HOLDINGS, LLC d/b/a QUALFON,

    Defendant.

Case No. 25-10556
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING QUALFON'S MOTION TO COMPEL ARBITRATION [13] AND GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE SUR-REPLY [16]**

Cheri Coleman, Duane Russell, and Taylor Carmichael claim that their former employer, DMI GC Holdings, LLC d/b/a Qualfon, racially discriminated against them. (ECF No. 1, PageID.2.) When Coleman reported the discrimination, she says Qualfon retaliated against her by terminating her employment. (*Id.*) So she, Russell, and Carmichael brought this suit alleging discrimination and retaliation under Title VII, 42 U.S.C. § 1981, and Michigan's Elliot-Larsen Civil Rights Act. (*Id.*)

In response, Qualfon moved to compel arbitration, claiming Plaintiffs each signed an arbitration agreement when they agreed to work there. (*See* ECF No. 13.) That agreement, says Qualfon, contains a delegation clause that delegates to an arbitrator even the threshold question of whether Plaintiffs' claims are arbitrable. (*See* ECF No. 15, PageID.471.) Thus, Qualfon asks this Court to dismiss the case or, in the alternative, to stay it pending arbitration. (ECF No. 13, PageID.269–270.)

The motion is fully briefed and does not require further argument. *See* E.D. Mich. LR 7.1(f). Indeed, Plaintiffs have even submitted a proposed sur-reply (ECF No. 16), which the Court has considered. For the reasons that follow, the Court GRANTS Qualfon's motion to compel arbitration and STAYS the case pending arbitration.

## I.

Qualfon onboards its new employees with many electronic documents. One of them is an arbitration agreement providing that disputes between Qualfon and its employees "will be decided by . . . arbitration and not by way of court or jury trial." (ECF No. 12-2, PageID.295.) That agreement also delegates to "the Arbitrator, and not any court" any dispute about "the validity, applicability, enforceability, unconscionability or waiver of this Agreement." (*Id.*)

Qualfon claims Plaintiffs signed this arbitration agreement. (*See* ECF No. 13-2, PageID.295–299.) Plaintiffs disagree. They claim, in sworn affidavits, that they "do not recall" reviewing or signing that agreement. (*See* ECF Nos. 14-5, PageID.451; 14-6, PageID.454; 14-7, PageID.457.) This lack of memory, however, fails to create a fact issue over the existence of the arbitration contract. Thus, the Court must grant Qualfon's motion to compel.

## A.

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls

2

within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). This is because "the duty to arbitrate arises only from the party's consent. So parties cannot be forced into an arbitral forum unless they actually agreed to arbitrate. And courts must confirm that they did so before shipping the dispute to arbitration . . . ." *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 843 (6th Cir. 2021). (citation omitted). But the Federal Arbitration Act (9 U.S.C. § 4) allows parties to agree that an arbitrator, rather than a court, will determine "gateway questions of arbitrability, such as whether the parties['] . . . [arbitration] agreement covers a particular controversy," *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (internal quotation marks omitted), "or whether a concededly binding arbitration clause applies to a certain type of controversy," *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *see also Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021).

As mentioned, the arbitration agreement at issue contains a delegation clause. (ECF No. 15, PageID.471.) Notwithstanding the presence of a delegation clause, "[a] challenge to arbitration agreement formation is always in the jurisdiction of the courts." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010)).

The Court agrees with Plaintiffs that they seek to put the making of the arbitration contract "in issue." 9 U.S.C. § 4. As both sides rely on materials outside the pleadings, the Court applies the familiar summary judgment standard under Federal Rule of Civil Procedure 56, asking whether the Plaintiffs' evidence creates "a

3

genuine issue of fact over whether [they] . . . accepted the [arbitration] contract." *Boykin*, 3 F.4th at 835. They must put forth "'specific facts, as opposed to general allegations,' that would allow a rational trier of fact to find that [they] did not acknowledge the agreement or learn about the arbitration condition of employment in other ways." *Id.* at 839 (quoting *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020)). "[C]onvenient memory lapses do not create factual disputes that are genuine," *id.* at 839–40 (collecting cases), but "'unequivocal denial' that takes the form of admissible 'evidence' can," *id.* at 840 (quoting *Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4, 7 (2d Cir. 1981)).

**B.**

To start, Plaintiffs' affidavits are inconsistent with their briefing. In their affidavits, each claim that they "do not recall" reviewing or signing an arbitration agreement. (ECF Nos. 14-5, PageID.451; 14-6, PageID.454; 14-7, PageID.457.) But in their response brief, Plaintiffs claim they "never signed an agreement to arbitrate." (ECF No. 14, PageID.343.) Thus, it is unclear whether Plaintiffs' argument is that they *do not recall* signing an arbitration agreement or that they *did not* sign an arbitration agreement. The affidavits, of course, are sworn testimony while the statements in the brief are just lawyer argument. But regardless of whether Plaintiffs contend that they did not physically sign or just do not recall signing the arbitration agreement, their arguments still fail.

First, to the extent Plaintiffs argue that they did not intend to be bound by an arbitration agreement, a "naked assertion . . . by a party to a contract that it did not

4

intend to be bound by the terms thereof is insufficient to place in issue 'the making of the arbitration agreement' for the purposes of Section 4 of the Federal Arbitration Act." *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1002 (6th Cir. 2009) (omission in original) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980)).

Second, to the extent that Plaintiffs do not remember signing the agreement or reading the policy, "[e]mployees may be bound by their signatures on an arbitration agreement even if they do not remember signing the agreement and even if they state that they never saw the policy." *Brown v. Heartland Emp. Servs., LLC*, No. 19-11603, 2020 WL 2542009, at *4 (E.D. Mich. May 19, 2020) (citing *DeOrnellas v. Aspen Square Mgmt., Inc.*, 295 F. Supp. 2d 753, 764 (E.D. Mich. 2003)); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) ("[O]ne who signs a contract which he has had an opportunity to read and understand, is bound by its provisions."); *Sutton v. U.S. Small Bus. Admin.*, 92 F. App'x 112, 125–26 (6th Cir. 2003) ("Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents.") (quotations omitted).

In other words, even if Plaintiffs do not *remember* signing the arbitration agreement and did not *intend* to agree to arbitrate, they can still be compelled to arbitrate if they signed an agreement to do so. And it is clear that Plaintiffs did exactly that. Qualfon provided a copy of the agreement (ECF No. 13-2, PageID.295–299), affidavits from a Qualfon administrator who oversees the database housing the agreements explaining that Plaintiffs "each accepted the terms and conditions" of the

arbitration agreement (*id.* at PageID.283; ECF No. 15-1), and an audit log with digital footprints showing that Plaintiffs reviewed and acknowledged the arbitration agreement (ECF No. 13-2, PageID.285–293; ECF No. 15-1, PageID.487–493).

Plaintiffs resist this showing by pointing to the absence of signed, physical documents. (*See* ECF No. 14, PageID.341.) That absence is explained, however, by the difference between the pre- and post-hire paperwork exchanged between Qualfon and its employees. (*See* ECF No. 15-1, PageID.482.)

To further explain, once a conditional offer letter is extended, Qualfon provides pre-hire employees with paperwork to complete using Adobe and/or Docusign. (*Id.* at PageID.483.) It provides that paperwork to the prospective employee's personal email address. (*Id.*) And once it is completed, a "font-driven signature" shows when each prospective employee signed the document. (*Id.*)

But the process for signing documents changes once a prospective employee becomes an actual employee. At this point, additional paperwork is provided to the new employee at their Qualfon email address. (*Id.*) That is where the new employee accesses the employee portal (SuccessFactors) to complete modules in the Learning Management System (LMS), which houses, among other things, the arbitration agreement. (*Id.* at PageID.484.) Unlike for the pre-hire paperwork, "LMS does not offer a font-driven signature capability." (*Id.*) That explains why there are no physical signatures for the arbitration agreements like there are for pre-hire documents. Instead, explains Qualfon's Learning Management Administrator, "LMS utilizes an audit-trail to confirm employees' electronic signatures." (*Id.*) In other words, "when

6

an employee logs into SuccessFactors with their unique credentials, and then opens a document pending in the LMS, and clicks 'Agree' at the bottom of the screen, the system automatically creates an audit trail for all transactions." (*Id.*) In turn, the "audit trail captures the exact date, time, and user ID tied to the documents reviewed and acknowledged" and serves "as secure verification—akin to a digital footprint—that the employee reviewed and agreed to the terms." (*Id.* at PageID.484–485.)

Qualfon provided the audit trails that included the exact date and time Plaintiffs reviewed and acknowledged the post-hire documents, including the arbitration agreements. (*Id.* at PageID.487–493; *see also* ECF No. 13-2, PageID.285–293.)[1] Thus, Qualfon has met its initial burden to show the validity of the arbitration agreement. *See Boykin*, 3 F.4th at 839; *Barnes v. G4S Secure Sols. (USA) Inc.*, No. 23-12897, 2025 WL 769970, at *10 (E.D. Mich. Mar. 11, 2025), *appeal docketed*, (6th Cir. April 11, 2025) ("By providing the purported arbitration agreements and accompanying declarations, Corporate Defendants met their burden 'to produce evidence that would allow a reasonable jury to find that a contract exists.'") (citing *Chaudhri v. StockX, LLC*, 19 F. 4th 873, 881 (6th Cir. 2021)); *Johnson v. Kelly Servs., Inc.*, No. 25-10570, 2025 WL 2794496, at *5 (E.D. Mich. Oct. 1, 2025) ("The Court therefore finds Kelly has carried its burden in showing a contract existed between it and Johnson," even if "Johnson did not physically sign the Agreement," which "is not

---

[1] That the arbitration agreements were accepted post-hire—and thus did not include a "font-driven signature"—is buttressed by the fact that each document was reviewed and acknowledged *after* each Plaintiff was hired. (*See* ECF No. 15-1, PageID.487–493.)

dispositive," where "he did in fact log into Kelly's system with a unique user ID and password and acknowledged the Arbitration Agreement on November 8, 2022.").

Thus, Plaintiffs' affidavits claiming that they "do not recall" reviewing or signing the agreement are insufficient to put the agreement's validity "in issue" in light of Qualfon's undisputed evidence showing otherwise. Indeed, even the more explicit statement in their brief that they never signed an arbitration agreement does not create a material issue of fact. *See Hardaway v. Aveanna Healthcare, LLC*, No. 23-12246, 2024 WL 2271826, at *3 (E.D. Mich. May 20, 2024), *appeal dismissed*, No. 24-1534, 2025 WL 1724453 (6th Cir. May 21, 2025). Again, it is not a signature that matters, but the audit trail demonstrating the employee's acceptance of the agreement.

The Sixth Circuit recently affirmed a similar case from this District. In *Tucker v. United Wholesale Mortg., Inc.*, the court found that a plaintiff failed to present a genuine issue of material fact as to the validity of an arbitration agreement, signed "through an online system which required him to create a password and profile," where he "simply states he did not recall signing an arbitration agreement and does not believe he would have done so without further explanation." No. 23-13134, 2024 WL 5629335, at *3 (E.D. Mich. July 10, 2024), *aff'd*, No. 24-1595, 2025 WL 1082316 (6th Cir. Apr. 10, 2025). "That bare assertion," the Sixth Circuit explained, "is precisely the kind of 'convenient memory lapse[ ]' insufficient to create a genuine factual dispute that precludes summary judgment." *Tucker*, 2025 WL 1082316, at *3 (quoting *Boykin*, 3 F.4th at 839). *See also Downing v. Valicor Env't Servs., LLC*, No.

8

23-10764, 2023 WL 7285139, at *4 (E.D. Mich. Nov. 3, 2023), *reconsideration denied*, No. 23-10764, 2023 WL 8602265 (E.D. Mich. Dec. 12, 2023) (finding that a plaintiff's statements in a sworn affidavit that "I do not remember signing an arbitration agreement" and even "I would have never signed a document giving up my rights without further explanation or counsel" are "not sufficient to create a genuine issue of fact, warranting a trial on the issue of whether an arbitration agreement exists."). So too here. Plaintiffs' affidavits—and their inconsistent briefing—are insufficient to challenge the validity of the electronically approved arbitration agreements.

Plaintiffs' cases do not move the needle. Relying on *Shye v. Bookspan LLC*, No. 21-12285, 2022 U.S. Dist. LEXIS 42334 (E.D. Mich. Mar. 9, 2022) and *Staten v. Home Care Servs.*, No. 21-11323, 2021 U.S. Dist. LEXIS 240947 (E.D. Mich. Dec. 16, 2021), Plaintiffs argue that they "provided signed declarations that they *did not consent* to an arbitration agreement with Defendant" like the plaintiffs did in those cases. (ECF No. 14, PageID.349) (emphasis added). But the affidavits say otherwise: Plaintiffs do not deny signing the agreements; they merely aver that they "do not recall" reviewing or signing the agreements. (*See* ECF Nos. 14-5, PageID.451; 14-6, PageID.454; 14-7, PageID.457.) But as discussed above, that difference matters. *Compare Boykin*, 3 F.4th at 839, *with Tucker*, 2025 WL 1082316, at *3.

As a final note, the parties contest whether the fact that the arbitration agreement was not included in Coleman's personnel file precludes its introduction in this proceeding. (ECF No. 14, PageID.350; ECF No. 15, PageID.477.) But the Court is not convinced that the definition of "personnel records" under Michigan's Bullard-

9

Plawecki Employee Right-To-Know Act includes arbitration agreements. *See Crockett v. Audi of Am., LLC*, 728 F. Supp. 3d 600, 606 (E.D. Mich. 2024). And in any event, Plaintiffs have not shown that the arbitration agreement in this case was "intentionally excluded" from Coleman's personnel records. *See id.*

In sum, because Qualfon has provided an arbitration agreement that Plaintiffs electronically reviewed and acknowledged, and because Plaintiffs have not sufficiently put the validity of that agreement "in issue," Plaintiffs are subject to the arbitration agreement.[2]

## II.

In its motion to compel arbitration, Qualfon asks the Court to either dismiss the case or stay the proceedings pending the arbitration. (ECF No. 13, PageID.269.)

According to the Supreme Court, "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472 (2024). Here, however, Qualfon requested either a stay or a dismissal, and Plaintiffs asked that the Court deny Qualfon's motion to compel arbitration and only stay the case if that motion is granted. In other words, neither party has simply "requested a stay."

Sixth Circuit case law supports staying the case. *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 518 (6th Cir. 2017) (explaining that the Federal

---

[2] Plaintiffs do not "specifically" challenge the delegation clause, so any remaining issues will be for the arbitrator to decide. *See Rent-A-Center, West, Inc.*, 561 U.S. at 72; *Becker*, 39 F.4th at 356.

10

Arbitration Act instructs district courts to stay cases pending arbitration if (1) the issue is arbitrable, (2) one of the parties applies for a stay, and (3) the party requesting a stay is not in default). And a stay is usually preferable to a dismissal, especially in cases like this one where there may be more issues for this Court to decide—e.g., if the arbitrator finds the dispute is not arbitrable. *See Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 942 (6th Cir. 2021). This comports with the Supreme Court's interpretation of the purposes of the Federal Arbitration Act. *Smith*, 601 U.S. at 472, 478 (explaining that staying, rather than dismissing, a case pending arbitration means the parties "can return to federal court if arbitration breaks down or fails to resolve the dispute," the party opposing arbitration cannot immediately appeal an order compelling arbitration, and the court can exercise its "supervisory role" as dictated by the FAA).

Thus, the Court will stay the proceedings, rather than dismiss the case.

### III.

For the foregoing reasons, Qualfon's motion to compel arbitration (ECF No. 13) is GRANTED and the Court STAYS the proceedings pending arbitration. And because the Court considered the arguments in Plaintiffs' proposed sur-reply (ECF No. 16-1), Plaintiffs' motion for leave (ECF No. 16) is GRANTED and the Clerk is DIRECTED to docket the sur-reply.

SO ORDERED.

Dated: January 14, 2026

                                                <u>s/Laurie J. Michelson</u>
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE